UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

MARTIN GONZALEZ,

      PLAINTIFF,

                             Case No.: 4:20-cv-101

v.


EXPERIAN INFORMATION SOLUTIONS,
INC., EQUIFAX INFORMATION
SERVICES, LLC, AND TRANS UNION         ***JURY TRIAL DEMANDED***
LLC,

      DEFENDANTS.


## COMPLAINT

Plaintiff Martin Gonzalez ("Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery, alleges against Defendants Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union LLC[1] as follows:

## PRELIMINARY STATEMENT

1.      This is an action for an actual, statutory, and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA") and the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq*. ("FDCPA").

2.      Indeed,

---

[1] Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC are referred to collectively as the "CRA Defendants."

Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies. In 1970, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). Towards that end, the FCRA requires a company that reports consumer credit information, referred to as a consumer reporting agency ("CRA"), to "adopt reasonable procedures for meeting the needs of commerce" which are "fair and equitable to the consumer." 15 U.S.C. § 1681(b).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

3.      Accordingly, and

In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth, as they apply to this case, in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

4.      Congress made the following findings when it enacted the FCRA:

**(1)** The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

**(2)** An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

**(3)** Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

**(4)** There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

5.      On December 4, 2003, President George W. Bush signed into law the Fair and

Accurate Credit Transactions Act ("FACTA").

> This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[2]

6.      Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."   15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.      The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."[3]

8.      Toward this end, Congress provided "powerful new tools" to consumers, including the right to dispute information due to fraud, obtain free credit reports due to identity theft, and the right to request the truncation of Social Security numbers on consumer disclosures (commonly referred to as credit reports).

---

[2]    http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html    Last visited February 11, 2020.

[3]    Pub. L. No. 108-159 (2003) http://www.gpo.gov/fdsys/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf Last visited February 11, 2020.

9.      FACTA also imposes additional duties on consumer reporting agencies to repair the damage done to identity theft victims' credit files by blocking information that is the result of identity theft.

10.      "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

11.      The CRA Defendants have been sued thousands of times wherein an allegation was made that said defendants violated the FCRA.

12.      Experian is sued over one-thousand times per year wherein a consumer makes an allegation that Experian violated the FCRA.

13.      In the regular course of business, Experian maintains records of lawsuits filed against it.

14.      Experian's business records include the sections of the FCRA alleged to have been violated for each of the lawsuits filed against it in at least the five years preceding Plaintiff's Complaint.

15.      Further, Experian's records identify the claims made by the plaintiff, such as whether the plaintiff alleged Experian mixed the plaintiff's file or if the plaintiff is a victim of identity theft.

16.      In *Calderon v. Experian*, the court compelled Experian to produce a list of prior lawsuits concerning mixed files against it for the five (5) years preceding Plaintiff's complaint. Also, the court compelled Experian to produce discovery on the number of mixed file disputes it

handled in the preceding five (5) years. *Calderon v. Experian*, Case No. 1:11-cv-00386-EJL-MHW, pp. 7-8 (D. Idaho Jun. 18, 2012).

17.     Indeed, Experian has produced the *Calderon* list in other lawsuits, including lawsuits filed by the undersigned.

18.     Similarly, and in the regular course of business, Equifax and Trans Union maintain records of lawsuits filed against them, and the lists of other similar incidents are readily accessible to said defendants.

19.     Equifax has produced such a list of other similar incidents to the undersigned.

20.     Equifax has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

21.     Experian has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

22.     Trans Union has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

23.     The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the CRAs.

24.     Experian's parent corporation, Experian plc, reported $4.66 billion in revenue in 2018.[4]

25.     Equifax reported more than $3.4 billion in operating revenue in its annual report for year ending in 2018.[5]

---

[4] https://www.experianplc.com/media/3529/experian-2018-annual-report.pdf Last visited February 11, 2020.
[5] https://investor.equifax.com/~/media/Files/E/Equifax-IR/Annual%20Reports/2018-annual-report.pdf Last visited February 11, 2020.

26.     Trans Union reported over \$2.3 billion in revenue for year ending 2018.[6]

## JURISDICTION & VENUE

27.     This Court has jurisdiction pursuant to 15 U.S.C. §§ 1681p and 1692k(d) and 28 U.S.C § 1331.

28.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

29.     Plaintiff Martin Gonzalez ("Plaintiff") is an adult individual and residing at 1707 N. Stanton Apt. 3, El Paso, Texas 79902.  Plaintiff is a "consumer" as defined by 15 U.S.C. §§ 1681a(c) and 1692a(3).

30.     Defendant Experian Information Solutions, Inc. ("Experian") does business in this judicial district and is an Ohio corporation with its principal place of business located at 505 City Parkway W, Orange, California 92668. Experian processes consumer disputes at its National Consumer Assistance Center located at Allen, Texas 75013.

31.     Experian is a CRA as defined by 15 U.S.C. § 1681a(f).  Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation. Experian outsources business services, including processing consumer disputes, to its vendor or sister company, or both, in Santiago, Chile.

---

[6] https://investors.transunion.com/~/media/Files/T/Transunion-IR/annual-reports/2018/annual-report-2018.pdf Last visited February 11, 2020.

32.     Defendant Equifax Information Services, LLC ("Equifax") does business in this judicial district and is a Georgia corporation with its principal place of business located at 1550 Peachtree Street NW #H46, Atlanta, Georgia 30309.

33.     Equifax is a CRA as defined by 15 U.S.C. § 1681a(f).  Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation. Equifax outsources business processes, including consumer disputes, to other countries, such as India. One of Equifax's dispute vendors is Intelenet.  Equifax also outsources business processing services to companies in the Philippines and Costa Rica.

34.     Defendant Trans Union does business in this judicial district and is a Delaware corporation with its principal place of business located at 555 W Adams Street, Chicago, Illinois 60661.

35.     Trans Union is a CRA as defined by 15 U.S.C. § 1681a(f).  Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.  Trans Union disburses such consumer reports to third parties of contract for monetary compensation. Trans Union outsources business processes, including consumer disputes to other countries, such as India.  One of Trans Union's dispute vendors is Intelenet.

**FACTUAL ALLEGATIONS**

36.     Plaintiff is a victim of identity theft.

37.   In or around 2010, an impostor applied for and opened accounts with various creditors, including, but not limited to Navient, Sallie Mae, and the Department of Education.[7]

38.   Plaintiff did not apply for or authorize someone on his behalf to apply for credit with the creditors identified in the preceding paragraph.

39.   Some of the personal identifying information used in connection with the applications for credit purportedly concerned Plaintiff, including his first name, last name, and social security number. However, the impostor did not use Plaintiff's date of birth or address; instead, the impostor used a different date of birth and an address in Long Beach, California.

40.   Plaintiff did not receive any goods, benefits, or services from Navient, Sallie Mae, or the Department of Education in connection with the fraudulent accounts.

41.   Thereafter, the CRA Defendants prepared consumer reports related to Plaintiff that included the inaccurate information.

42.   The inaccurate information includes but is not limited to, accounts, names, addresses, phone numbers, and employer (hereinafter referred to as the "inaccurate information").

43.   The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict Plaintiff's credit history or creditworthiness, or both.

44.   For example:

    a.   Navient Account 1 ending in 1E00**** reported as 120 days past due, maximum delinquency of 120 days in April and December 2016, and closed due to transfer;

---

[7] Experian also included a collection account, Southwestern Credit Systems, in Plaintiff's file.  The collection account did not belong to Plaintiff.

b.  Navient Account 2 ending in 1E00**** reported as 120 days past due, maximum delinquency of 120 days in April and December 2016, and closed due to transfer;

c.  Navient Account 3 ending in 1E00**** reported as 120 days past due, maximum delinquency of 120 days in April and December 2016, and closed due to transfer;

d.  Sallie Mae Account ending in 1000 reported as transferred to another lender;

e.  Department of Education Account ending in 3315XXX reported as a collection account, past due as of April 2019, and with a past due balance of $2,579;

f.  Department of Education Account ending in 3315XXX reported as a collection account, past due as of April 2019, and with a past due balance of $3,925; and,

g.  Department of Education Account ending in 3315XXX reported as a collection account, past due as of April 2019, and with a past due balance of $1,962.

45.  Equifax prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.  Plaintiff disputed inaccurate information to Equifax. In response, Equifax deleted one of the Navient accounts and the Sallie Mae account; however, failed to reinvestigate or delete all of the other items of information disputed by Plaintiff.

46.  Alternatively, Equifax failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.

47.  Plaintiff made another dispute to Equifax by mail and challenged the inaccurate information.  In support of his dispute, Plaintiff provided Equifax with a copy of an FTC Identity Theft Report, police report, and copies of the forged Master Promissory Notes.  The Master Promissory notes were completed by hand and signed with a wet signature.

48.     In response to Plaintiff's dispute, Equifax notified Plaintiff that it refused to block the disputed items of information.

49.     Equifax did not determine that (1) Plaintiff's block request was made in error; (2) made a material misrepresentation of fact in his dispute letter; or, (3) obtained possession of goods, services, or money as a result of the blocked transactions.

50.     Further, Equifax did not provide Plaintiff with the business name, address, and phone number of any furnisher whom it contacted in connection with the disputed items of information or notify Plaintiff that he had the right to add a consumer statement to his file disputing the accuracy or completeness of the disputed information.

51.     Plaintiff requested Equifax to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute.  On at least one occasion, Equifax failed to provide Plaintiff with the steps it undertook while reinvestigating the disputed items of information.

52.     Plaintiff requested Equifax to provide him with a copy of his file due to fraud. Equifax failed to provide Plaintiff with a copy of his file after receipt of Plaintiff's request.

53.     Experian prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.

54.     Plaintiff disputed the inaccurate information to Experian by mail to Experian's National Consumer Assistance Center ("NCAC") located in Allen, Texas.

55.     Between 2019, in Allen, Texas, Experian processed no less than three (3) of Plaintiff disputes.

56.     In response to Plaintiff's communications, including disputes, Experian generated its responses to Plaintiff's disputes from the Allen, Texas NCAC and included the address: P.O. Box 9701, Allen, Texas 75013.

57.     Experian did not delete or reinvestigate all of the disputed items of information.

58.     Alternatively, Experian failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.

59.     On at least one occasion, Experian notified Plaintiff from Allen, Texas, that it considered his dispute as "suspicious," and Experian refused to reinvestigate the disputed items of information.

60.     Plaintiff made another dispute to Experian by mail and challenged the inaccurate information.  In support of his dispute, Plaintiff provided Experian with a copy of an FTC Identity Theft Report, police report, and copies of the forged Master Promissory Notes.  The Master Promissory notes were completed by hand and signed with a wet signature.

61.     In response, Experian notified Plaintiff that "other items disputed by Plaintiff" are not currently displaying on his credit report.

62.     Plaintiff requested his credit file from Experian due to fraud; however, on at least one occasion and after receipt of Plaintiff's request and an identity theft report, Experian failed to provide him with a copy of his file.

63.     Trans Union prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.

64.     Plaintiff disputed inaccurate information to Trans Union. Trans Union did not delete or reinvestigate all of the disputed items of information.

65.     Alternatively, Trans Union failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.

66.     Plaintiff made another dispute to Trans Union by mail and challenged the inaccurate information.  In support of his dispute, Plaintiff provided Trans Union with a copy of

an FTC Identity Theft Report, police report, and copies of the forged Master Promissory Notes. The Master Promissory notes were completed by hand and signed with a wet signature.

67.     In response, Trans Union deleted some of the disputed items of information.

68.     Plaintiff requested Trans Union to provide him with his file due to fraud.  On at least one occasion, Trans Union failed to provide Plaintiff with a copy of his file after receipt of his request and an identity theft report.

69.     In response to Plaintiff's disputes, the CRA Defendants did not contact third parties concerning the accuracy of the disputed information.

70.     The CRA Defendants also did not review underlying account documents for each account contained in Plaintiff's file or the subject of Plaintiff's disputes, or both, such as the applications for credit and the personal identifying information reported with each trade line.

71.     The CRA Defendants did not conduct any handwriting analysis on Plaintiff's signature or the signatures on the account applications.

72.     The CRA Defendants did not make a reasonable inquiry into the disputed information.

73.     The CRA Defendants did not review all relevant information provided by Plaintiff related to the disputed information.

74.     At best, the CRA Defendants verified the false information by confirming some of Plaintiff's personal identifying information with some of the personal identifying information reported by the data furnishers who supplied the disputed information.

75.     The CRA Defendants failed to modify or delete all of the inaccurate information.

76.     Despite Plaintiff's exhaustive efforts to date, the CRA Defendants have nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

77.     As of result of the defendants' conduct, Plaintiff has suffered unique and distinct actual damages in the form of adverse credit action, lost credit opportunities, harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities, and emotional distress, including anxiety, frustration, embarrassment, and humiliation.

78.     At all times pertinent hereto, the defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

79.     At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

80.     The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to the Plaintiff that are outlined more fully above and, as a result, the defendants are liable to the Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)

81.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

82.     Equifax negligently failed to comply with the requirements of the FCRA, including Sections 1681c-1, c-2, e(b), and i.

83.     Alternatively, Equifax willfully failed to comply with the requirements of the FCRA, including Sections 1681c-1, c-2 e(b) and i.

84.     As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury.

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Experian)

85.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

86.     Experian negligently failed to comply with the requirements of the FCRA, including Sections 1681c-1, e(b) and i.

87.     Alternatively, Experian willfully failed to comply with the requirements of the FCRA, including Sections 1681c-1, e(b) and i.

88.     As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury.

## COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)

89.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

90.     Trans Union negligently failed to comply with the requirements of the FCRA, including Sections 1681c-1, e(b) and i.

91.     Alternatively, Trans Union willfully failed to comply with the requirements of the FCRA, including Sections 1681c-1, e(b) and i.

92.     As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury.

## JURY DEMAND

93.     Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
TX BAR NO. 24088777
**THE ADKINS FIRM, P.C.**
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
T:  (615) 370.9659
F:  (205) 208.9632
E:  MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF MARTIN GONZALEZ*